UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**v.** **Case No. 6:25-cr-00305-JA-DCI**

**REZLIN ANTWAN THOMAS**

---

**ORDER**

This case is before the Court on Defendant's Amended Motion to Suppress (Doc. 54). After considering the evidence presented at two suppression hearings and arguments in the parties' memoranda, the motion must be denied.

## I. BACKGROUND

On October 20, 2025, Orange County Sheriff's Office (OCSO) deputies and Drug Enforcement Administration (DEA) agents were conducting surveillance at a shipping facility after receiving a tip about a crate containing narcotics. (Doc. 57 at 2). At approximately 4:15 p.m., a white van arrived at the shipping company and drove to the back of the building. (*Id.* at 3). Around 4:25 p.m., the van left the parking lot. (*Id.*). OCSO Deputy Nance followed the van, riding in the passenger seat of an unmarked DEA vehicle. (Doc. 71 at 7). A few minutes later, Deputy Nance radioed to other officers that he observed the van run a stop

sign at the intersection of Wetherbee Road and Orange Avenue in Orlando. (Doc. 57 at 3).

OCSO Deputy Lenahan received the radio communication and conducted a traffic stop shortly thereafter. (*Id.*). After approaching the van and speaking with Defendant—the driver and sole occupant of the van—Deputy Lenahan noticed the smell of burnt cannabis and had Defendant step out of the vehicle. (*Id.*). Deputy Lenahan's colleague and her K-9 partner conducted a free-air sniff of the van, during which the K-9 gave a positive alert. (*Id.*). Law enforcement conducted a warrantless search of the van, recovering approximately thirty kilograms of cocaine from a large wooden crate. (*Id.* at 4). Defendant was placed under arrest, and his cellphone was seized. (*Id.*).

Defendant moves to suppress the evidence seized during the stop, arguing that the law enforcement officers lacked reasonable suspicion or probable cause to conduct the search. (Doc. 70 at 2).[1] The Court held two hearings on the motion to suppress. (*See* Mins., Docs. 69 & 78). At the first hearing, Defendant's counsel asked Deputy Nance if he had body-worn camera footage showing Defendant's

[1] Defendant's original Motion to Suppress (Doc. 53) and Amended Motion to Suppress (Doc. 54) were based on facts unrelated to the Defendant's case. (*See* Gov't Resp., Doc. 57; Def.'s Reply, Doc. 62). Defendant had not filed a renewed motion to suppress by the first hearing. (*See* Hr'g Tr., Doc. 71). Because relevant arguments were made in Defendant's Memorandum in Support of the Motion to Suppress (Doc. 70), the Court incorporates those arguments in the Amended Motion to Suppress. (*See* Doc. 75, Order and Notice of Hearing).

alleged failure to stop at a stop sign. (Hr'g Tr., Doc. 71, at 7). Deputy Nance replied that there was no body-worn footage of the traffic violation. (*Id.*). Defense counsel asked Deputy Nance whether the lack of footage was "because you're in an unmarked vehicle? Are you not in full badge insignia in uniform . . . ?" (*Id.* at 8). Deputy Nance answered, "I was not at the time, yeah. I was in plain clothes." (*Id.*). After Deputy Nance finished testifying and left the hearing, the Government played footage from Deputy Lenahan's body-worn camera, which showed Deputy Nance in full uniform—and wearing a camera—when he arrived at the scene of the traffic stop. (Doc. 70 at 7–8).

While the Court found the other officers who testified at the first hearing credible, (*See* Hr'g Tr., Doc. 71 at 41), given the discrepancy regarding Deputy Nance's attire and the footage presented, the Court directed the parties to submit written arguments addressing Deputy Nance's testimony. In its response memorandum, the Government requested a second hearing so that Deputy Nance could again testify. The Court granted the motion, as an additional hearing would allow Deputy Nance to "address the credibility issues raised by his previous testimony." (Doc. 75). The second hearing took place on August 10, 2026 and was limited to the basis for the traffic stop. (*See* Mins., Doc. 78). At the hearing, Deputy Nance attributed the discrepancy between his testimony and the body-camera footage to a mistake, testifying that he had

misremembered what he was wearing on the day of the incident. The Government also presented audio from inside the DEA vehicle Deputy Nance was riding in on the day in question. In that audio, Deputy Nance can be heard giving radio reports of his observations of the van to other officers involved in the investigation.

## II. LEGAL STANDARDS

For Fourth Amendment purposes, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Though searches conducted without a warrant are generally unreasonable under the Fourth Amendment, one exception to the general rule is for searches of automobiles. *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). Under that exception, law enforcement may conduct a warrantless search of a vehicle if "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *Id.* In evaluating the existence of probable cause, "[c]redibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

## III. DISCUSSION

The parties do not dispute whether probable cause for a search existed once Deputy Lenahan detected the odor of burnt cannabis. Rather, Defendant's

motion to suppress centers on the credibility of Deputy Nance, whose testimony about his uniform was inconsistent with the footage shown at the first hearing. After considering the testimony from both hearings, the Court finds Deputy Nance credible.

"The failure to provide exact recollections is reasonable since over a year has passed since the incident and there was neither body cam nor dash cam footage of the incident." *See United States v. Allen*, No. CR425-057, 2025 WL 3477727, at *2 (S.D. Ga. Nov. 3, 2025). At the second suppression hearing, Deputy Nance credibly attributed the inconsistency between his testimony and the footage to a lapse in memory. According to Deputy Nance, he knew that the reason there was not body-worn footage from inside his vehicle was because he had not been wearing his tactical vest. He testified that it was his usual practice to take off his tactical vest when riding in a patrol vehicle, particularly one that was unmarked. And he explained that he put the tactical vest on before walking from the unmarked vehicle to the site of Defendant's traffic stop.

Given that over nine months had lapsed between the day of the incident and Deputy Nance's testimony in court, it is reasonable that he would not remember exactly what he was wearing on the day in question. The Court thus does not find the misstatement fatal to Deputy Nance's credibility. This is particularly true given that Deputy Nance clearly, confidently, and consistently

recalled the details of following the van, including where and when the alleged traffic violation occurred. For example, Deputy Nance was consistent in recalling the vantage point from which he observed the traffic infraction: after following the van for "about two minutes" from "approximately 20 to 30 yards away," Deputy Nance observed Defendant's failure to stop at a stop sign. (Doc. 71 at 9–10). And when defense counsel asked if he was following from "20 to 30 feet," Deputy Nance corrected him and said it was "approximately 20 to 30 yards" away. (*Id.* at 10–11). At the first hearing, he also correctly recalled the color, make, and model of the van, what direction the van was traveling, where the traffic violation occurred, and which officers he was in communication with when the traffic violation occurred. (Doc. 71 at 6–11).

Deputy Nance's credibility is further bolstered by an audio recording presented at the second hearing. The recording, taken from the DEA vehicle Deputy Nance was riding in, contains audio of Deputy Nance relaying his observations of the van via radio to other officers involved in the investigation, including Deputy Lenahan. The recording corroborates relevant portions of Deputy Nance's testimony: that he was following the van closely enough to have seen a traffic violation, that the traffic violation occurred consistent with the timeline Deputy Nance presented at both hearings, and that Deputy Nance was communicating his observations with other officers throughout the

investigation. For these reasons, the Court bases its finding that Deputy Nance is credible on more than, as the Defendant puts it, "the conclusory assertion that a traffic violation occurred." (Doc. 70 at 6). Rather, the Court finds Deputy Nance's testimony credible because he established the distance, vantage point, and duration of his observation of the van Defendant was driving. Taken alongside Deputy Nance's testimony at the second hearing—particularly as corroborated by Deputy Nance's radio communications to other officers—the Government has satisfied its burden of showing that the traffic stop was supported by probable cause.

Having established that law enforcement possessed probable cause to believe that a traffic violation occurred, the stop of the van was lawful. At the first hearing, the Court found that Deputy Lenahan's testimony was fully credible. (Doc. 71 at 41). Deputy Lenahan testified he smelled "the odor of burnt cannabis" emanating from the van, (*id.* at 13), which established probable cause for law enforcement to conduct a search of the vehicle, *see United States v. Williams*, 731 F.App'x 863, 867 (11th Cir. 2018). Because there was probable cause to support the stop and search of the van, the motion to suppress must be denied.

## IV. CONCLUSION

For the reasons explained above, it is **ORDERED** that Defendant's motion to suppress (Doc. 54), supplemented by Defendant's Memorandum (Doc. 70), is **DENIED**. Defendant's original motion to suppress (Doc. 53) is **DENIED** as moot.

**DONE** and **ORDERED** in Orlando, Florida, on September 2nd, 2026.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record